UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X    Docket No.  07-9932
NIXA 0' SULLIVAN, ELIO HAWKINS,
DANIEL JAMES O'SULLIVAN, an INFANT    **FIRST AMENDED COMPLAINT**
under16 YEARS OLD;

                              Plaintiff,

   - against -

DEA AGENT ANDREW, in his Individual and  Official
Capacities, and FIVE UNKNOWN NAMED
AGENTS OF THE DRUG ENFORCEMENT
AGENCY (DEA AGENTS JOHN DOE 1-5),
all Individually and in their Official Capacities;

Defendants.

**JURY TRIAL DEMANDED**
---------------------------------------------------------------- X

      Plaintiff Nixa O'Sullivan, Elio Hawkins, Daniel James O'Sullivan, and an Infant under 16 Years old brings this <u>Bivens</u> action against the individuals, all special agents of the Drug Enforcement Agency, complains as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiffs Nixa O'Sullivan, Elio Hawkins, Daniel James O'Sullivan, and an Infant under 16 Years old, hereinafter called "Plaintiff," brings this action under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,</u> 403 U.S. 388 (1971), to redress the constitutional, physical, and emotional injuries plaintiffs sustained when a search warrant was executed on their premises, at which time Plaintiffs' rights were intentionally and recklessly

violated by the defendants under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. All acts were committed under color of federal and state law, thus depriving Plaintiff of rights secured by the Constitution and laws of the United States and the State of New York. The defendants executed the search warrant against the wrong person, the Plaintiff. However, despite ascertaining that they had the wrong person, the defendants continued to detain and interrogate the Plaintiff for approximately two additional hours.

2. Plaintiff sustained severe damages, physical and emotional injuries, including, but not limited to, serious injury to plaintiff's physical and mental health, violations of plaintiff's civil rights, damage to plaintiff's body, loss of freedom, loss of comfort, humiliation, shame, embarrassment, extreme mental and emotional harm and stress, and other injuries not yet fully ascertained.

**JURISDICTION**

3. This action is brought pursuant to Bivens and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded upon 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforementioned constitutional provisions. Plaintiff further invokes the pendent jurisdiction of this Court, pursuant to 28 U.S.C.A. § 1367, to hear and decide any and all claims arising under state law. Venue herein is proper under 28 U.S.C. § 1391 (b); the defendants are located in the Southern District of New York.

**PARTIES**

4. During all times relevant to this Complaint, the Plaintiff Nixa 0' Sullivan, was and still is

a citizen of the United States, residing in the City of Brooklyn, State of New York.

5.     That defendant DEA Agent Andrew was one of the six Drug Enforcement Agency Agents who supervised and participated in the unlawful seizure, arrest, investigation, and other constitutional violations committed upon the plaintiff. Agent Andrew acted under color of law, and is being sued in his individual and official capacity.

6.     That defendant DEA Agents John Does 1-5 were the other five agents who supervised and participated in the unlawful seizure, arrest, investigation, and other constitutional violations committed upon the plaintiff. DEA Agents John Does 1-5 acted under color of state and federal law, and are being sued in their individual and official capacity.

7.     During all times relevant to this Complaint the Defendants, and each of them, were acting under color of law, to wit, under color of constitution, statutes, ordinances, laws, rules, regulations, policies, customs and usages of the United States of America and/or the State of New York and/or the City of New York.

8.     During all times relevant to this Complaint the Defendants, and each of them, separately and in concert, engaged in acts or omissions which constituted deprivation of the constitutional rights, privileges and immunities of the Plaintiff, and while these acts were carried out under color of law, they had no justification or excuse in law and were instead gratuitous, illegal, improper and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property or ensuring civil order.

9.     During all times relevant to this Complaint, the Defendants, and each of them, had the power and the duty to restrain the other Defendants and prevent them from violating the law and the rights of the Plaintiff, but each of the Defendants failed and refused to perform that

duty, failed and refused to restrain the other Defendants, and thereby became a party to the unnecessary subjection of harm and denial of the basic rights of the Plaintiff.

## FACTUAL ALLEGATIONS

10. Plaintiff, Nixa 0' Sullivan, reiterates and realleges each and every allegation contained in paragraphs 1 through 9 of this Complaint with the same force and effect as though set forth herein.

11. The Plaintiff herein, Nixa 0' Sullivan, is an educated, hard-working, Hispanic mother of Columbian origin with two children. She is a professional trader at a major Japanese bank.

12. On or about January 25, 2006 at 5:31 a.m., Ms. O'Sullivan was asleep with her family in their apartment bedroom when she heard a sudden, forceful banging on their front door. Their apartment is located on 289 Empire Boulevard, Apt 4E, in Brooklyn, New York 11225, 3550. Half-asleep, Plaintiff Ms. 0' Sullivan left her two children in the bedroom with her husband, and went to open the front door.

13. When Ms. 0' Sullivan opened the door, there were six guns pointed at her in the face. The six men behind these guns all shouted and screamed at Ms. O'Sullivan to get on the floor immediately.

14. Ms. 0' Sullivan, still half-asleep, shocked and paralyzed with confusion, stood still. Standing at 5 feet 3 inches, she is a small woman of diminutive stature. This was when one of the Defendant DEA Agents violently and aggressively shoved Ms. 0' Sullivan to the floor. Still in a state of shock, Ms. 0' Sullivan remained motionless on the floor.

15. Ms. 0' Sullivan was then handcuffed by the Defendants, who then dragged her by her hands to the kitchen. In the meanwhile, Ms. 0' Sullivan was in a state of confusion, but never

received any reply to her repeated question *as* to what was going on.

16.     The Defendants John Does 1-6 of the DEA then propped Ms. 0' Sullivan on the kitchen floor, and asked who else was in the residence. Ms. 0' Sullivan answered that her family, including her husband and two children (a 13-year old son and an infant daughter), were also in the apartment.

17.     Ms. 0' Sullivan felt it was a mistake to disclose this information about her family to the Defendant DEA Agents, so she tried to get up in order to prevent the Defendant Agents from further harassing her household.

18.     The Defendants John Does 1-5 and Agent Andrew of the DEA, however, simply shoved tiny Ms. 0' Sullivan back to the kitchen floor.

19.     While one unnamed DEA Agent John Doe 1 watched over Ms. 0' Sullivan in the kitchen, the other Defendant DEA Agents went into the bedroom to find the rest of Ms. 0' Sullivan's family. The Defendant Agents entered the bedroom with their guns drawn, though it was merely Mr. 0' Sullivan with his two children in the room.

20.     These five Defendant Agents then took Ms. 0' Sullivan's husband in the living room and handcuffed him also.

21.     At this point, the Defendant DEA Agents then tried to take Ms. 0' Sullivan's 13-year old son into the living room. However, Ms. 0' Sullivan's infant daughter was in a hysterical state of mind and crying loudly due to the violent and excessive commotion caused by the Defendant DEA Agents' actions. So, upon Mr. 0' Sullivan's earnest request that his son be allowed to look after their infant daughter, the Defendant Agents reluctantly acquiesced.

22. The remaining Defendant DEA Agents left to watch over Ms. 0' Sullivan and asked her name. Upon her reply, the Defendant Agent exclaimed, "We got her!" All this while, Ms. 0' Sullivan and her husband pleaded with the DEA Agents as to what was going on, a question for which they never obtained a reply.

23. The Defendant DEA Agents then seized Ms. 0' Sullivan's purse. They searched it for her identification. Upon finding her I.D., the Defendant DEA Agents huddled together and compared it with their own picture of the suspect they were in search of.

24. The Defendant Agents then showed Ms. 0' Sullivan a picture of a girl who was much taller and younger than her. This girl actually bore little resemblance to Ms. 0' Sullivan, and demonstrated that the Agents did not investigate their case properly. Furthermore, their harassment of Ms. 0' Sullivan even after seeing her in person proves that the Defendant Agents' conduct was no doubt malicious, intentional, unlawful, and thereby unconstitutional.

25. The Defendant Agents then asked if Ms. 0' Sullivan recognized the girl. This girl was apparently some international fugitive, and that was why the DEA Agents were following her.

26. Ms. 0' Sullivan denied knowledge of the girl, whose first name was "Aixa", as opposed to "Nixa". Additionally, the girl's last name was entirely different than Plaintiff Ms. 0' Sullivan's (it was a name of Spanish origin). Yet, the Defendant Agents still continued their unreasonable harassment and terrorization of Ms. 0' Sullivan and her family by asking her where she kept her illegal drugs.

27. The Defendant DEA Agents then went into the living room to interrogate Mr. 0' Sullivan. They asked Mr. 0' Sullivan about whether he kept drugs in the house, why he owned a

fax machine, and other intrusive questions. In spite of all that took place, the Agents still kept the handcuffs on both Ms. 0' Sullivan and her husband, and continued to terrorize the entire family with their intrusive search and seizure, relentless interrogation, and unlawful investigation.

28. The Defendant DEA Agents, who had been so rude and brutal to Ms. 0' Sullivan's family, finally removed everyone's handcuffs after nearly two hours. But before they had done so, they continued to intentionally terrorize Ms. 0' Sullivan and her family with their brute, harsh conduct. They repeatedly accused Ms. 0' Sullivan and her family of harboring illegal drugs.

29. The Defendant DEA Agents finally left Ms. 0' Sullivan's residence at about 7:10 a.m. They were at the 0' Sullivan's residence for nearly two hours.

## THE DAMAGES AFTER THE INCIDENT

30. The violent manner in which the Defendant DEA Agents manhandled Ms. 0' Sullivan left her with bruises on her body and especially around her wrists where she was brutally handcuffed. Additionally, the psychological trauma caused her to see a therapist several times.

31. Every time Ms. 0' Sullivan sees a police officer now, she freezes, hyperventilates, and starts crying. This is because she has grown paranoid that the police are always following her. During such episodes, Mr. 0' Sullivan would often have to leave work to rush to his wife's aide.

32. Ms. 0' Sullivan missed about 10 days of work due to depression from her episode, and she earns $25 an hour to support her family.

33.     Finally, Ms. 0' Sullivan's social life has been ruined and she has had trouble raising her kids. because of her depression, and her entire family has also had to fight through episodes of depression due to the brutality of the Defendant DEA Agents' actions.

## *BIVENS – FOURTH, FIFTH and FOURTEENTH AMENDMENTS*

34.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 33 of this Complaint with the same force and effect as though fully set forth herein.

35.     On or about January 25, 2006, Plaintiff was subjected to tortuous battery, falsely arrested, falsely seized and falsely detained, deprived of her freedom, and unlawfully imprisoned by Defendants in violation of her civil and constitutional rights. All acts by the Defendants were committed under color of law, thus depriving Plaintiff of the rights secured by the Constitution and laws of the United States and the State of New York.

36.     On or about January 25, 2006, Defendant DEA Agent Andrew and John Does 1-5 subjected Plaintiff to tortuous battery, falsely arrested, falsely seized and falsely detained Plaintiff, thus depriving her of her freedom. Said seizure was made unlawfully and without probable cause, as Defendants were of the knowledge that Plaintiff had committed no crime, or were at least grossly negligent, reckless, and malicious in assuming that Plaintiff was indeed a criminal fugitive.

37.     Upon information and belief such seizure, arrest, and detention was ordered and directed by the Defendants.

38.     Upon information and belief, the Defendants and each of them took an active role in

recklessly and maliciously identifying the Plaintiff as a criminal perpetrator, solely for the purpose of implementing an improper arrest.

39. As part of the false arrest, detention and accusations, Defendants caused Plaintiff to be wrongfully searched and seized in a very violent, tortuous manner, falsely arrested, falsely imprisoned, and deprived of her liberty without probable cause, and was further exposed to disgrace, physical injury and embarrassment.

40. The Defendants individually and collectively knew at the time of Plaintiffs arrest and at all times since then that the evidence they had in connection with the investigation brought against Plaintiff was false, inconsistent with and insufficient to establish her guilt. The Defendants' suspicions were based solely on their irrational and intentional insistence that Plaintiff was a criminal fugitive, even though Plaintiff looked entirely different and had a different name than the fugitive the DEA Agents intended to take into custody.

41. Each of the Defendants separately and in concert acted outside the scope of their jurisdiction and without authorization of law and each of the Defendants, separately and in concert acted willfully, knowingly and purposefully with the specific intent to deprive Plaintiff of her right to freedom from illegal seizure of her person, freedom from illegal detention and imprisonment. In arresting, detaining and interrogating Plaintiff, the Defendants and each of them knew or should have known they were violating laws of the State of New York and those statutory and constitutional rights set forth herein and have failed to prevent the same and therefore acted in concert to harm Plaintiff.

42. As a direct and proximate result of the aforesaid acts of the Defendants and each of them,

Plaintiff suffered great physical harm, mental anguish and violation of rights from then until now and she will continue to so suffer in the future having been greatly humiliated and

43. The Defendant DEA Agents lacked any probable cause to brutally arrest, hold, and detain the Plaintiff Nixa 0' Sullivan in custody at her own residence for the prolonged period of two hours.

44. Without such probable cause, Defendant DEA Agents wrongfully detained the Plaintiff Ms. 0' Sullivan at her residence, and denied Plaintiff her freedom for a period of approximately two horrifying hours. During said time, Plaintiff was physically prevented from leaving the custody of the DEA, in that she was handcuffed and surrounded by DEA Agents, or kept under the custodial supervision of the DEA.

45. As a result of said false arrest and false imprisonment, Plaintiff suffered and continues to suffer physical pain, great emotional and psychological harm, anxiety and personal fear, all due to the callous indifference of said Defendants in falsely accusing, falsely arresting, and falsely imprisoning Nixa 0' Sullivan.

*INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

46. The Defendants intentionally inflicted emotional distress on plaintiff because of their above-stated roles in the wrongful and brutal search, seizure, stop, detainment, false arrest, prolonged imprisonment, intimidation and humiliation of the Plaintiff Nixa 0' Sullivan.

47. Said emotional harm was exacerbated by the brutal terrorizing of the Plaintiff and her

family in her home by Defendants. The Defendants, without basis, yet investigated, detained, imprisoned, and denied Plaintiff of her freedom with the intention of causing extreme further harm, distress, and duress to the Plaintiff Ms. 0' Sullivan.

48.     The Defendants knew that their conduct would cause severe and extreme emotional harm to Plaintiff.

49.     Said harm did in fact occur in this case, in that the Plaintiff was debilitated to the point that she still suffers from episodes of anxiety, hyperventilation, anger, depression, loss of sleep, and other factors - all to the extent that the Plaintiff is in need of counseling by a psychiatrist or similar health care provider to deal with her emotional distress. Plaintiff has also had emotional difficulty in helping her family cope with the psychological harm caused by the defendants' actions.

### *Excessive Force In Violation Of The 4th And 14th Amendments*

50.     The unprovoked and brutal attack upon the 5 feet 3 inch tall female plaintiff Nixa 0' Sullivan by DEA Agents constituted an application of excessive force in violation of the 4th Amendment to the United States Constitution, as made applicable to the States through the 14th Amendment.

51.     Moreover, this attack violated the 14th Amendment's substantive due process component.

52.     The unlawful acts complained of were carried out by the Defendant DEA Agents, who either carried out the brutally harsh search and seizure, or failed to intercede, to prevent, and to stop the terrorization of Plaintiff.

53. All DEA Agents complained of herein are alleged to have been acting under color of state law and at all times were acting intentionally and willfully.

*Battery*

54. The unidentified DEA Agents John Does 1-6 made excessive, unlawful and unprivileged bodily contact with the Plaintiff Nixa 0' Sullivan by the brutal way they shoved her repeatedly, manhandled her and handcuffed her, as set forth above.

55. The subject DEA Agents were acting intentionally and recklessly, and within the scope of their duties as federal investigative agents of the DEA.

56. Such unlawful physical contact constitutes a battery under New York Law.

**WHEREFORE**, plaintiff praise and request the Court to enter judgment on his behalf and provide the relief as follows:

    1. Compensatory damages in the amount of $3,000.000;

    2. Punitive damages in the amount of $3,000,000.00;

    3. Attorney's fees cost and interest as provided under 42 USC § 1988;

    4. And for such other and further relief as the Court finds deem and justice.

Dated:  November 26, 2007        Respectfully Submitted By:
          NewYork, NY

                                                _____
                                                James LeBow (JL 4535)
                                                *Attorney of Plaintiff*
                                                *488 Madison Avenue, Suite 1100*
                                                *New York, New York 10022*